UNITED STATES of America ex rel.
Delbert WOOD and James R.
Wood, Plaintiffs,

v.

Micheal BLACKER, Esq., James C. Haggerty, Esq., Public Defender's Office,
Defendants.

Civ. A. No. 1315–69.

United States District Court,
D. New Jersey,
Civil Division.

Dec. 9, 1971.

Delbert and James R. Wood, pro se.

George F. Kugler, Jr., Atty. Gen. by Daly D. E. Temchine, Deputy Atty. Gen., for defendants.

OPINION AND ORDER

GARTH, District Judge:

The plaintiffs, Delbert L. and James R. Wood, have filed a civil action for damages against the defendants, Micheal Blacker and James C. Haggerty. The complaint alleges that defendants, representatives of the New Jersey Public De-

fender, inadequately and negligently represented plaintiffs in earlier state criminal proceedings in which the plaintiffs pleaded guilty and were sentenced. Plaintiffs in seeking damages invoke the jurisdiction of this Court under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). Defendants have moved to dismiss plaintiffs' complaint.

### I.

Defendants contend that the instant action is, in essence, a *habeas corpus* action and that plaintiffs' complaint should be dismissed for failure to exhaust available state remedies as is required by 28 U.S.C. § 2254.

Plaintiffs' complaint clearly states that they are seeking to invoke the jurisdiction of this Court under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). The complaint prays for relief in the form of money damages.

■■ The writ of habeas corpus is intended to test the legality of restraints on a person's liberty. See R. Sokol, Federal Habeas Corpus 31 (1969). In an early opinion of the United States Supreme Court, Chief Justice Marshall wrote:

> "The writ of *habeas corpus* is a high preogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause." Ex Parte Watkins, 28 U.S. (3 Peters) 193, 201, 7 L.Ed. 650 (1830).

See Fay v. Noia, 372 U.S. 391, 401–402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962).

The relief sought by a petition for a writ of habeas corpus—one's liberation from illegal confinement—is clearly distinguishable from the relief which these plaintiffs seek. Admittedly, many of the same factual inquiries may be necessary in both cases, but this is not to say that the two actions are the same. Inasmuch as the instant action is not a petition for a writ of habeas corpus, I need not consider whether plaintiffs have exhausted their state remedies.

### II.

Defendants additionally contend that plaintiffs' service of process is insufficient in that it did not comply with the requirements of Rule 4(d) (6) of the Federal Rules of Civil Procedure, which governs service of process "upon a state or municipal corporation or other governmental organization thereof subject to suit." Defendants argue that plaintiffs complain only of defendants' *official* activities and that personal service upon them, rather than upon the chief executive official of the State Public Defender or upon the Attorney General for the State of New Jersey, is insufficient.

■ Even though the acts complained of may have been committed by defendants in their official capacity, a recovery under 42 U.S.C. § 1983 runs against the official himself in his *private* capacity and not against the Government. Ocasio v. Bryan, 374 F.2d 11 (3d Cir. 1967). Since the defendants are being sued in their private capacity, service of process was sufficient under Rule 4(d) (1) of the Federal Rules of Civil Procedure to bring the defendants within the jurisdiction of this Court. Accord, Smith v. Ellington, 348 F.2d 1021 (6th Cir.), *cert. denied,* 382 U.S. 998, 86 S.Ct. 589, 15 L.Ed.2d 486, *reh. denied,* 383 U.S. 954, 86 S.Ct. 1207, 16 L.Ed.2d 216 (1965).

### III.

■ The defendants further contend that the doctrine of judicial immunity is available to them as a defense in this action. This doctrine was recently discussed at great length in Bethea v. Reid, 445 F.2d 1163 (3d Cir. 1971). In that case, an inmate brought an action under 42 U.S.C. § 1983 against three employees of the Federal Bureau of Investigation and an Assistant United States Attorney for damages suffered by a violation of plaintiff's Fourth and Fifth Amendment

rights. Writing for the majority, Judge Gibbons initially noted that the defendants were federal officers acting "under color of" federal law and thus not subject to an action for damages under 42 U.S.C. § 1983. 445 F.2d at 1164. The Court of Appeals for the Third Circuit then held that the doctrine of judicial immunity from suit under 42 U.S.C. § 1983 extends to both state and federal prosecutors.

The Court of Appeals primarily based its holding on the earlier case of Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1965). Holding that judicial immunity extended to state prosecutors, Judge Staley, for the majority, said:

> "The reasons are clear: his primary responsibility is essentially judicial—the prosecution of the guilty and the protection of the innocent. . . . [H]is office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest. In this respect, it is imperative that he enjoy the same freedom and independence of action as that which is accorded members of the bench." 361 F.2d at 589–590.

The Court of Appeals affirmed the District Court's dismissal of the action as against the Assistant United States Attorney while expressing no opinion as to the availability of immunity to the remaining defendants (agents of the Federal Bureau of Investigation). 445 F.2d at 1166.

The issue here is whether the defense of judicial immunity is available to defendants in an action for damages pursuant to 42 U.S.C. § 1983 allegedly arising from the performance of their official duties as the State Public Defender. Defendants rely on three cases in support of the contention that they should be cloaked with such immunity.

In Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1966), the United States Supreme Court held, *inter alia,* that the defense of judicial immunity was available to a *municipal police justice* in an action brought against him under 42 U.S.C. § 1983. Bauers v. Heisel, *supra,* held that a *county prosecutor* was immune from suit under § 1983 for acts done within the authority of his office. Neither of these cases support defendants' contention that a state-appointed public defender should be immune from an action brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). In fact, the only mention of the availability of the doctrine of judicial immunity to a defense attorney was by Judge Freedman in a dissenting opinion in *Bauers, supra,* wherein it was observed:

> ". . . I do not believe that the state's advocate should be any more immune than the defendant's advocate, who is licensed by the State . . . ." 361 F.2d at 594.

Defendants next call to our attention the recent opinion of this Federal District Court in Karney v. Van Ness, No. 1186–70 (D.N.J. unpublished, filed March 24, 1971), which relied on *Bauers, supra,* with respect to the issue of whether judicial immunity extends to a New Jersey Public Defender in a suit under 42 U.S.C. § 1983 for damages allegedly arising from the failure of the Public Defender to seek a timely judicial review of plaintiff's convictions.

The essential teaching of *Bauers, supra,* is that prosecutors should be entitled to the same freedom and independence of action that is accorded members of the judiciary. The underlying rationale for this assertion is that prosecutors and judges must be afforded the "vast quantum of discretion which is necessary for the vindication of the public interest." 361 F.2d at 590–591.

It cannot be pretended that the responsibility of the public defender is essentially judicial. Defendants were obli-

gated to vigorously *oppose* the efforts of the State to convict their clients. The fact that the defendants' attorneys may have received remuneration from the State of New Jersey for legal services rendered for and on behalf of the plaintiffs in a criminal proceeding in no way alters the very nature of the defendants' duty to defend their clients against the State's efforts to convict.

Prior to the enactment of N.J.S.A. 2A:158A–1 *et seq.* (1967), (the New Jersey Public Defender Act), it was a practice in this State to have court-appointed attorneys represent accused persons who were unable to retain private counsel. Until the decision of the New Jersey Supreme Court in State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966), which was the impetus for the adoption of a public defender system, compensation was provided to assigned counsel only in capital cases, pursuant to N.J.S.A. 2A:163–1. In State v. Rush, the New Jersey Supreme Court held, *inter alia,* that the expense of providing counsel for any indigent accused is a "necessary expense" of prosecution and consequently the economic burden of the county. 217 A.2d at 449. The effective date of the decision was delayed, however, until the Legislature had the opportunity to decide whether the burden of compensating an attorney for the representation of an indigent accused should be met by the existing system of assignment in individual cases or by a public defender. It is now history that New Jersey opted for a public defender system.

In my view, there is no more reason for extending judicial immunity to state public defenders than there could have been in an extension of such immunity to their predecessors, i. e., court-appointed counsel. Nor should such immunity be a concomitant of representation of indigents by assigned (and perhaps non-compensated) counsel in state municipal courts. See Rodriguez v. Rosenblatt and State v. Conley, 58 N.J. 281, 277 A.2d 216 (1971).

The state control and the reasons for judicial immunity apparent in the cases of prosecutors and the judiciary are completely lacking in the case of either court-appointed counsel or public defenders. I therefore hold that the defendants may not avail themselves of the asserted defense of judicial immunity.

## IV.

The principles involved in the above determination concerning judicial immunity are presented again in a slightly different guise involving the jurisdiction of this Court.

Plaintiffs seek to invoke the jurisdiction of this Court under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). In order to proceed under these sections, it must be demonstrated that the actions of the defendants were performed "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . " 42 U.S.C. § 1983. Several cases have dealt with the issue of whether defense counsel, who is appointed by the court and compensated by the State, is acting "under color of" state law.

In Mulligan v. Schlachter, 389 F.2d 231 (6th Cir. 1968), the Court of Appeals for the Sixth Circuit held that a court-appointed attorney who represented plaintiffs in a prior criminal proceeding was not acting "under color of" state law and plaintiffs had no cause of action cognizable under 42 U.S.C. § 1983 for alleged inadequate representation. Accord, French v. Corrigan, 432 F.2d 1211 (7th Cir. 1970).

In Peake v. County of Philadelphia, 280 F.Supp. 853 (E.D.Pa.1968), petitioner contended that the Voluntary Defenders Association, through two public defenders, refused to assist him in the preparation for and institution of legal proceedings which refusal allegedly deprived petitioner of his civil rights within the meaning of 42 U.S.C. §§ 1983, 1985. Denying petitioner's request on

the ground that the complaint failed to state a claim upon which relief could be granted, the District Court said:

> "For the defendants' action to be 'under color of' State law, there must be a '[m]isuse of power, possessed by virtue of state law'. Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961); [citation omitted]. The fact that Attorneys Pepp and Hassett are members of the Voluntary Defenders Association, an organization which is, in part, subsidized by the State or local governments, does not mean that any power they [Pepp and Hassett] possess is possessed by virtue of State law." 280 F.Supp. at 854.

See Vance v. Robinson, 292 F.Supp. 786 (W.D.N.C.1968); Kregger v. Posner, 248 F.Supp. 804 (E.D.Mich.1966); Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), *aff'd. per curiam*, 345 F.2d 797 (3d Cir. 1965).

The New Jersey State Public Defender Act did not clothe the instant defendants with a "power" that they did not already possess. These defendants were empowered to represent plaintiffs by virtue of their being licensed to practice law pursuant to R.R. 1:21–1 *et seq*. Moreover, *though remunerated by the State of New Jersey*, these public defenders were neither servants nor representatives of the State, nor were they controlled by the State.

 For all of the foregoing reasons, I conclude that the appointment of defendants to the Public Defender and their acceptance of the representation of the plaintiffs did not make them officers or servants of the State. Consequently, their actions were not performed for the state nor "under color of" state law within the purview of 42 U.S.C. § 1983 and 28 U.S.C. § 1343. There having been no actions of defendants performed under "color of any Statute . . . of . . . [New Jersey]", this Court is without jurisdiction to entertain plaintiffs' request for relief. The motion to dismiss plaintiffs' complaint is granted, but without costs.